Our first case this morning is Constantine v. C.F.M. Distributing. Mr. Sada. Thank you, Your Honor. Good morning, Judge Wallach, Judge Rader, and Judge Rayner. My name is Neil Sada, and I represent Teresa Constantine, who is the personal representative for Richard Constantine, who is the original applicant in this case. The applicant here applied for registration of two marks related to a business for Maryland Fried Chicken, which is a food establishment. The board denied the registration based on erroneous finding that the appellant was not the owner. How does this mark denote a single consistent source of anything? Your Honor, there is evidence in the record that it denotes a consistent source of the services that my client renders in Lake County, Florida. One, I don't think it has to denote a single source overall. I think there can be other sources, and they can still be subject to registration. But in this case specifically, Your Honor, there was a state court action that occurred during the pendency of this registration that resulted in a preliminary injunction in favor of my client. How could you share the same rights with 29 or 30 other restaurants that are all selling different products in different ways with different outcomes? I'm trying to see how this serves the purpose of a mark, of denoting the source of a single identifiable product or service. Your Honor, I think there's two issues here in that question. The first one is the intent of the statute is to eliminate public confusion with regard to the source of goods from the mark. And this is the first step in doing that. The mark was registered since up to 1997, and then the registration was canceled. But here, my client is trying to establish some consistency within the use of the mark. And with regard to what rights the other potential users may be out there have, those rights, we're not 100% sure what they are. Isn't that the problem here, Counsel? Our case law has been pretty consistent in this area with respect to whether you can have more than one owner of a trademark. In fact, our predecessor court says that one must be the owner of a mark before it can be registered. And it seems to me that the record reflects that there's many owners of the mark. Well, in this proceeding specifically, Your Honor, there is only one owner of the mark, and that's our client, or he's the senior user. There's the opposer, original Maryland Fried Chicken, who's definitely a junior user based on the findings of the board. He had approximately 30 restaurants, and they're all using the mark. But your client only owns one of the restaurants. And in fact, some of them don't sell chicken, do they? I don't know that the record's entirely clear on whether or not some of them do or do not sell chicken, Your Honor. But I still think that the mark, or my client's entitled to register the mark, and that those other users of the mark are entitled to establish their rights to use it or to continue to use it. You point to one incident of policing, which is an injunction which, it appears in the record, is voluntarily stipulated to by the other party. Isn't that right? That is correct, Your Honor. You're speaking against CFM, but CFM was not the subject of that injunction. They were not a party to that litigation, were they? They were not a party, but they did participate in some of the evidentiary proceedings, Your Honor. There was an evidentiary proceeding to obtain the preliminary injunction, which the court found that my client was the senior user of the marks, and it identified the services rendered by my client. When you say they participated, they have an opportunity to present their position to the court? Not as a party, no, Your Honor. If I may continue. Please. The holding by the board in this case, Your Honor, specifically, is that there was one that the mark couldn't be registered because it failed to identify or no longer served to identify a sole source of origin for the goods, and it seems, though I don't know that it's entirely clear from the board's order, that it was based on a failure to police by my client, which I think goes with some of the questions you were just asking. However, that's the exact holding in the wallpaper case, which is Wallpaper Manufacturers Limited versus Crown Wall Covering Court. In that case, the board came to the exact same conclusion. It stated when a mark loses its capacity to point out uniquely the single source or origin of goods, it loses its status as a trademark. But it's still in that wallpaper case, which is a lot different than this. There were just two people contesting the mark, and it was still clear that the mark was a denoter of the origin of identifiable products. Here we have a bit more problem with that, don't we? First, more people contesting ownership and less identification of products. On that, how is your client providing any consistency at all to the users of this mark? Either the recipe, the mix that's used to bread the chicken, the decor of the restaurant, the napkins that they use, the kinds of things that people would identify in one restaurant as being related to another. How is your client providing any of that as opposed to CFM? For one, CFM is just a distributor of the products or the products with the mark on it. As a distributor, I don't believe they can acquire any ownership rights. But based on the facts of this case, the board found that there are common law rights. My client has common law rights and that my client has been using the mark since as early as 1980 to identify its services and products in Lake County, Florida. This case isn't about whether your client has a right to use the mark. This case is about whether your client has a right to exclude everybody else from using the mark. I think part of it is whether or not my client has a right to register the mark. That's the point, isn't it? Yes, and if I may continue. The point in registering is to exclude, is it not? I think this is the first step in determining what the rights of the other users are after that. Notice went out with the application for registration here, and there were only two of the users here, CFM and Original Maryland Fried Chicken, that opposed that application. But once the mark is registered, the other users will still have the right to assert priority of use or to cancel the registration based on the facts and circumstances of each user of the mark. Whether there's 29 right now or not, I think, still remains to be determined. I would submit to the court I don't think there are still 29 users. I'd like to follow up on a question that Judge Rader was asking, and that is the duty to oversee the quality of the licenses. This starts with the case of Denison Mattress Factory versus Spring Air, and it's followed up by the Kentucky Fried Chicken case. Those cases stand for the proposition that an owner of a mark, or purported owner of a mark, has a duty to oversee the quality. Here, the restaurant, some of them don't even serve chicken, but yet they call Maryland Fried Chicken. Other restaurants are involved with Italian foods. I don't see anything in the record that indicates that your client has sought to maintain a consistent quality of the product. Am I incorrect on that? Can you point to the record that shows the contrary? I don't think that, as I stated before, the mark was registered up until 1997 by someone other than my client. In terms of whether or not they were policing the mark, I don't think that until 1997. What has your client done to police the mark? Since they have been open, they have prevented anyone from opening a restaurant or infringing upon them in Lake County. When you say anyone, you mean their estranged son. Right, it was their helms. No, but there hasn't been any other competition within their common law rights. There has been no violation of their common law rights to use the mark since then. At least, there is no evidence in the record of it. Whether or not it was their estranged... That's an injunction, though. What you're talking about is an injunction that your client obtained in state court for the prevention of competition. That is what it was. It's not a trademark. Your client doesn't have a trademark that prevents other competitors from coming into the county. You have an injunction. That's different, isn't it? One of the claims in the suit was infringement. It was based on whether or not they could open a store across the street, more or less. They have those common law rights to prevent someone from using the mark in that area because the mark does identify the products and services provided by my client. I see that I'm into my rebuttal time, so would you like to save the rest? I would, Your Honor. I would like to save it for rebuttal. Okay. Thank you, Mr. Seva. Thank you, Your Honor. Ms. Davis. Good morning, Your Honor, and may it please the court. My name is Amber Davis, and I'm here on behalf of the opposer, CSM Distributing Company. With the court's permission, I will be addressing the issues of lack of ownership and abandonment, and my co-counsel will be addressing the applicant's misplaced reliance on both the injunction and the state court. You can try that. We're going to talk about the whole case. I understand. I understand. We don't divide issues here. You may proceed. I understand. This case centers around whether two trademark applications are entitled to a federal registration. The board below found that the applicant was not the owner of the mark at the time he filed the application, and therefore they're void of an issue, and that if there were any rights, that if the applicant ever had rights or his brother, Albert Constantine, had rights, such rights were lost through naked licensing and failure to please. We ask that this court affirm the board's decision for two main reasons. First, under any combination of the risk-rocket factors, applicants... Do you think somebody deserves a mark here? No, Your Honor. We don't. We think that each individual restaurant may have common... Is there any responsibility to bring these marks together in some way and make them stand for something, or should we just allow the chaos to continue? Your Honor, I think that the status quo is much better than the alternative. If you allow applicants to obtain a registration, the registration means that he has exclusive rights to use the mark in commerce. Like Judge Reyna said, you have to own the trademark first in order to be entitled to a registration. If you look at the risk-rocket factors, which have been used by many circuits other than just the court in risk-rocket, they were used by the Third Circuit, the Seventh, the Ninth, and the Second, we look at the contractual expectation, who's responsible for the quality of the goods and services, and who do consumers perceive as standing behind the goods. And no one factor is dispositive, but no matter which combination of factors we look at, we come to the same result, and that's that applicant is not the owner of the trademark. With respect to contractual expectations, as this Court is well aware, there's a very convoluted and complicated ownership history. But what's important to note is that nowhere in this voluminous record is there one license, assignment, or transfer of rights to applicants. As the Court found in Norco v. Weeds, to acquire title and prove priority, the applicant bears the burden of proving a clear chain of title, extending back to the original owner of the mark and ending with himself. Applicant has admitted that Albert Constantine was the owner from 1965 to 1997, but nowhere in the record is there an assignment of rights from Albert Constantine to applicants. The second factor is who controls the quality of the goods and services. As this Court found in In Re Polar Music, a trademark informs the public of the source of the goods and assures them of its quality. In this case, the evidence of the record supports the conclusion that applicant has taken absolutely no part in controlling the quality of the goods and services. What do you do with the wallpaper case where our predecessor courts seem to indicate that a mark could indicate more than one source? Your Honor, the wallpaper case, like you said, is much different than this case. And yes, it is true that a trademark can denote more than one source. There are many cases that have found that. I think it was this Court that found it in the Holiday Inn case. But in those cases, the issue was typically a concurrent use proceeding where somebody filed for a concurrent use application and they acknowledged that they only had rights to a limited area and they, in their application, denoted who the other people were and where their rights were limited. And then the Court looks at that and they say, okay, can each of these independent owners, can each of these independent restaurants, if it was in this case, own the trademark without there being any confusion? The problem is there is confusion in this case. And it's not two restaurants. At one point it was 35. Now it's somewhere between 20 and 30. There's going to be confusion. And concurrent use rights, my co-counsel will address this in more detail, but in order to be eligible for a concurrent use registration, you have to adopt the mark without knowledge of the other users. That's not what happened in this case. The TTAB said, unfortunately, we see no reason to think that the pieces of this would-be franchise can ever be put back together. What if we were to say, well, we think they can be put back together. And we think the appellant's the person to do that. We think the granting of a trademark would end the squabbles and would put this franchise together. I don't think that the appellant would be the right person to put it back together. If you were going to grant a trademark, I would ask that you grant it to my client, CFM Distributing Company, because they're the only company that's maintained any type of policy. But you haven't applied for it, have you? We did not apply for a trademark application at this point, Your Honors. So there's only one applicant. There is only one applicant. Supposing they ask for original Orange County, Maryland fried chicken. Would you have a problem with that? If they ask for original- Orange County, that's where they are. They're in Lake County. Lake County? It said Orange and Free. Okay. If they were to file for a trademark application that did not have the logos in question, and they changed the logo, and they were the original Orange County, Maryland fried chicken, that's fine. But that's not what we're here about. We're here about a trademark that over 30 restaurants are using. They're all using these trademarks, but they're selling different goods. Like you said, some of them specialize in Chinese. Some of them specialize in Greek. You don't even have to sell chicken. I mean, there's no- This is not Kentucky fried chicken, Your Honors. Not only is there no Colonel Sanders secret recipe, but there's no Colonel Sanders. Now, with respect to abandonment- Does our case law demand there be a Colonel Sanders? The case- A trademark. Yes, Your Honors. It does. The very purpose of the trademark is to denote a source behind the goods. It doesn't have to be a single source. I understand that. There are cases where you can have more than one source, but there aren't cases where you can have 30 different sources. With respect to abandonment, a mark shall be deemed abandoned under 15 U.S.C. 1127 if, through conscious acts of omission and commission, the mark loses its significance as a mark. Congress put that in the Lanham Act for a reason, Your Honor, and the reason is this very fact scenario. If the acts of applicant and his brother are not conscious acts of commission and omission resulting in abandonment, what is? In closing, I leave you with this, Your Honors. In contemplating the registration of these two marks, please bear in mind the significance of the registration. 15 U.S.C. 1057B states that a certificate of registration on the principal register shall be prime asatia evidence of the validity of the mark, of registrant's ownership of the mark, and of registrant's exclusive right to use the mark in commerce. The record does not support a finding that applicant is the owner or that applicant has the exclusive right to use the mark in commerce. And because of this, we respectfully request that this Court affirm the Board's decision below for the reasons discussed in our brief and here today. Thank you, Your Honor. Thank you, Ms. Davis. Ms. Meeley? Good morning, Your Honors, and may it please the Court. My name is Suzanne Meeley, and I'm here on behalf of Opposer Original Maryland Fried Chicken, LLC, which I will refer to as OMFC for convenience. I'll be addressing the applicant's misplaced reliance on both the state court injunction and on concurrent use rights, more particularly. The applicant erroneously relies on the state court injunction because the state court injunction involves different parties. CFM was not even a party to that case. It involved different facts. All of the facts were not laid out. It was a preliminary injunction and a stipulated settlement agreement. There was no finding on the merits. It was an inter-family dispute below. In the state court, this was all about two warring factions of one segment of the Constantine family, and that would be between Richard, the father, and Robert Constantine, my client. And this is all over one restaurant in Mount Dora, Florida, which was 15 miles from the applicant's restaurant in Lake County, Florida. So not essentially across the street. It was 15 miles away, and the court found preliminarily that Lake County, Florida, since the applicant had used the marks in Lake County, Florida, that presumptively they would preliminarily grant them an injunction as to Lake County while the case was pending. And that was all the injunction did. And then there was a stipulated settlement agreement after Mr. Constantine died, and my client agreed to appease his mother. He agreed to a stipulated settlement agreement to stay out of Lake County, Florida. Why isn't that evidence of enforcement of a trademark? It is very limited evidence of enforcement. To give you an example of... But it still shows, does it not, that they were enforcing, and they were seeking to exclude others from encroaching on what they thought was their right, their market. It is limited evidence of enforcement, but the rights only extend to Lake County, Florida. If you say limited, how much is enforcement? Do they have to do this in every state? Enforcement needs to be more than one limited action within 15 miles of your store, where there is no interstate commerce, and where there is no evidence whatsoever of enforcement from 1980 until 2008. Was there any indication in the state court determination, such as it was, that the preliminary injunction was based on a mark analysis as opposed to a competition analysis? No, Your Honor. No. So there was no finding on the merits in the state court, and for that reason alone, never mind the factual distinctions between the state court case and the current opposition, appellant reliance is just completely misplaced there. Concurrent use is his second argument here, and that is simply a red herring. Concurrent use does not... There is a requirement under Section 1052 that the applicant have... the original applicant, or have the applicant's consent. Here, we would be granting to the appellant the right to exclude anybody that comes behind him. The second factor that we need to consider is whether it creates a likelihood of confusion to do so. Under the DuPont factors, we're looking at the same mark for the same restaurant services, and generally within the same geographic area of Central Florida. I thought this was well outside of Florida and well outside of chicken in some instances. It is, Your Honor. However, of the 30 or so restaurants that are currently operating, about 19 of them are in Central Florida. Aren't there any Maryland fried chicken stores in Maryland? No, Your Honor. There are not. All Kentucky fried, aren't there? Yes, and there are some in Georgia and some other states, but primarily we're looking at Florida, Central Florida. And an In Re Beatrice Foods permits territorially restricted registrations where the territories are distinct and where there's no likelihood of confusion. The TTAB found that there would be a likelihood of confusion if the applicant was granted rights in this mark and found, in fact, that not only is there no there there, but that the hodgepodge system that currently exists would be better than granting the imprimatur of federal registration to the applicant. And in the Gray versus Daffy Dan's case in this court, if it's the same goods, the same services, in the same general service area, then there's no concurrent use rights that can be granted. Therefore, no other of the 30-some-odd users could obtain a concurrent use registration. If they can't obtain that concurrent use registration, then that argument falls apart. It's not simply a matter of the other users obtaining a concurrent use registration. In conclusion, we ask that this court, for all of the reasons that we've stated here today, affirm the TTAB's decision and find that the applicant is not the owner of the marks, that they are void ab initio, and that no rights should be conferred in the mark. Okay. Thank you, Ms. Neely. Mr. Sada, you have five and a half minutes. Thank you, Your Honor. The first thing I'd like to address, Your Honor, is the order on the preliminary injunction. And there was a trademark analysis in that preliminary injunction. In fact, the express language of the injunction reads- Point to the record, please. It's page A69 of the record. Was the court applying state law or federal law? The court was applying a common law state law, Your Honor. But not federal trademark law? Yes, the same principles, but it wasn't a federal trademark infringement action. The application was pending, but we were enforcing common law rights at that time. And the first paragraph on page A69 reads- The plaintiff is the senior user of the word and design mark, Maryland Fried Chicken, in Lake County, through his continuous use of the mark for approximately 30 years to identify restaurant services by his Leesburg restaurant so that the mark has acquired a special significance as the name of the services rendered by the plaintiff in his geographic market area. And then the next paragraph goes on- The plaintiff established through evidence of the plaintiff's advertising and customers from Lake County, Florida witness testimony and the proximity of the defendant's Mount Dora restaurant to the plaintiff's Leesburg restaurant that the plaintiff's market area and use of the mark includes the geographic area of Lake County, Florida and in particular includes the location of the defendant's Mount Dora- Who prepared this? Did the court write this or was this submitted? I wasn't involved in the state court litigation, but I would say the typical procedure is for the counsel's record for each party to submit proposed orders to the judge and then the judge adopts whichever changes he'd like to make or she'd like to make. So in that regard, there was an enforcement action. What else did the applicant do to enforce? I'm not sure that the applicant needed to do anything else. There's no case that I'm aware of that requires a certain number of actions taken to enforce their rights in the trademark here, but the first time that someone did infringe upon the rights that they were aware of, they did take action. So your client was never aware that other restaurants were using the product produced by CFM distributing companies? I think the record's clear that there was some awareness that there were other restaurants using the mark. You just said they weren't aware? No, that what their rights were, whether or not they had the right to prosecute infringements against outlets that were restaurants that were out of state or outside the county. And really, it goes to what's reasonable. You're saying if they weren't aware of trademark law and didn't enforce their rights, it doesn't matter because they weren't aware of the law? No, Your Honor. I think it comes down to a commercial reasonableness aspect of it, and I would point to Judge Neese's opinion in the wallpaper case again, in which he said some infringements may be short-lived and will disappear without action by the trademark owner, which, I'll submit to the court, is what happened here. Some of these restaurants have gone out of business, which counsel for one of the opposers testified that there's about 20 of the 30 left right now. Judge Neese also went on to say, frequently, one cannot determine with any certainty that one has priority over another's use, and to charge another with infringement under such circumstances can be disastrous. I think there's a reasonable standard here as to whether or not you prosecute every single outlet that you know is using the mark or not, because you have to consider financial resources, the continuation of the business, basically, and you have to be absolutely sure of your rights. And in this case, when they were sure of it, they prosecuted it. I think that's reasonable, and I don't think there's anything else in the record to demonstrate that anyone else infringed upon their common law rights to use the mark, and I don't think there's a need for any other actions to be shown here. With regard to ownership of the mark, the board found, without any controversy, that he's been using the mark or the applicant was using the mark since 1980 in commerce and has a commercial interest in the use of the mark. The board, there was a voluminous record here, and there's a lot of information about ownership and the chain of title and the sticks, bundles of ownership, but none of that is really relevant here. The relevant factor is that my client was the owner of the mark at the time that it made the registration, and it did take steps to enforce it through. He was an owner. That means there were other owners? There may be other owners. We're not exactly sure what rights they may have, but this is the first step in determining. How do you treat our case law then that says you have to be the owner? He is the owner of the mark. No, you said he was an owner. I want to restate that, Your Honor. He is the owner of the mark, and at the time the application was filed, he was aware that he was the senior user of the mark, and in these proceedings, he is the senior user of the mark. There is no one that has priority over him, and he should be entitled to register the mark based on the findings of the board and the other parties to this case. There are 30 other, more or less 30, somewhere between 20 and 35, other companies actually selling some kind of food under that chicken mark that you proposed. At one point, I believe the record states there were 29 or 30 other restaurants that were using the mark in some form or fashion, Your Honor. Do you have a final thought for us, Mr. Cesar? Yes, Your Honor. I think the board erred here in determining that the mark couldn't be registered. I think whether or not the mark identifies a sole source is not relevant to whether it's been abandoned. It hasn't been abandoned, and it certainly wasn't abandoned by my client. Whether others are using the mark should not prevent my client from registering the mark at this point. That is the first step in determining whether or not this franchise can be put back together.  Thank you.